THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

AT&T COMMUNICATIONS OF THE )  Case No. 2:06CV00783 DS
MOUNTAIN STATES, INC. ET AL., )

        Plaintiffs, )

vs. ) MEMORANDUM OPINION
                              AND ORDER ADDRESSING
) MOTION TO REMAND
QWEST CORPORATION,
)

        Defendant. )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Asserting that the Court lacks original jurisdiction over this case, Plaintiffs AT&T Communications of the Mountain States, Inc. and TCG Utah (collectively "AT&T"), pursuant to 28 U.S.C. § 1447(c), move to remand this matter to the state court from which it was removed.[1] For the reasons that follow, AT&T's Motion to Remand is denied.

AT&T contends that no federal claim is stated on the face of its Complaint. It argues that because both of its claims for

---

[1] On August 22, 2006, Plaintiffs filed a Complaint in Utah's Third Judicial District Court alleging breach of contract and breach of the implied covenant of good faith and fair dealing relating to the parties interconnection agreements, which set forth the terms under which the networks of telephone companies are connected. Defendant filed its Notice of Removal on September 15, 2006.

relief seek enforcement of the terms of its contracts with Defendant Qwest Corporation ("Qwest"), only state law claims are alleged.

Qwest counters that removal was proper under 28 U.S.C § 1441 because federal law created the cause of action and because AT&T's right to relief necessarily depends on resolution of a substantial question of federal law.

## II. DISCUSSION

The Federal Telecommunications Act of 1996 (the "1996 Act"), 47 U.S.C. § 151 et seq., requires telecommunications carriers competing within the same area to interconnect their networks in order that customers of one carrier may call customers of other carriers. In the instant dispute, AT&T asserts that Qwest charged it more than competing carriers under unfiled interconnection agreements in violation of federal and state law. The issue presented is whether the Court has federal question jurisdiction over claims that duties mandated by the 1996 Act and referenced in the parties' interconnection agreements were breached.

Interconnection agreements, as noted, are provided for by federal law and have been characterized by the Tenth Circuit as

follows:

> The Telecommunications Act of 1996 ... aims to encourage competition in the telephone services industry. Among other things, the Act requires telephone companies competing within the same area to "interconnect" their networks to ensure that callers who subscribe to one local telephone service can receive calls from, and place calls to, those who subscribe to a different local telephone service. ...
>
> The terms under which the networks are connected are contained in "interconnection agreements." The Act directs telephone companies to attempt to agree upon the terms of interconnection through negotiation. *Id.* § 252(a)(1). If they cannot agree, the Act directs the governing state commission to arbitrate or mediate disputed issues. *Id.* § 252(b)(1). The duties which the Act imposes are only minimum requirements, and telephone companies may enter into interconnection agreements "without regard" to the Act's requirements. *Id.* § 252(a)(1). The state commission must, however, approve the final agreement. *Id.* § 252(e)(1). ...

*Southwestern Bell Tel. v. Brooks Fiber Communications of Oklahoma, Inc.*, 235 F.3d 493, 494 (10th Cir. 2000).

The Court's jurisdictional inquiry begins with the Complaint. "In general, original jurisdiction is lacking unless there is diversity of citizenship or 'a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Topeka Housing Authority v. Johnson*, 404 F.3d 1245, 1248 (10th Cir. 2005)(quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). If the Court lacks subject matter jurisdiction over a removed case, the case must be remanded to state court. *Id.*, 28

U.S.C. § 1447(c). Qwest contends that the Court has federal question jurisdiction over the dispute.

In determining federal question jurisdiction, the Tenth Circuit instructs as follows:

> District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case arises under federal law if its 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" ... Thus, even though a plaintiff asserts only claims under state law, federal-question jurisdiction may be appropriate if the state-law claims implicate significant federal issues.
> ...
> Even if a federal question appears on the face of a well-pleaded complaint, federal jurisdiction is not automatic. It is by now axiomatic that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons*, 125 S. Ct. at 2367. Finally even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.

*Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006)(citations omitted).

What appears to the Court to be the heart of the dispute is stated by AT&T in its Complaint as follows.

4

>Notwithstanding these legal requirements and prohibitions, and in violation of the 1996 Act and Utah law, Qwest entered into secret interconnection agreements with two telecommunications providers in Utah. The secret agreements permitted those providers to purchase certain products and services at discounts of up to ten percent off the rates that other similarly situated carriers, including AT&T and TCG, were paying Qwest for the same services. Qwest unlawfully did not file these interconnection agreements with the PSC, and, because they were not filed and remained undisclosed, AT&T and TCG did not know about them and therefore could not demand the same discounted rates, as they were entitled to do.

Compl. at ¶ 14. AT&T claims in its First Cause of Action that Qwest breached the parties Interconnection Agreement. And in its Second Cause of Action AT&T claims that Qwest breached implied covenants of good faith and fair dealing.

A fair reading reflects that the Complaint alleges rights and duties imposed by the 1996 Act and the violation of those duties by Qwest when it allegedly breached the parties' interconnection agreements.[2] Among other things AT&T complains that Qwest violated Section 252)(a)(1) and (e) of the 1996 Act by failing to file the agreements at issue with state commissions. Compl. ¶¶ 10,14,24. AT&T also complains that had Qwest not violated the 1996 Act by not filing the competing agreements, it could have adopted the rates, terms and conditions of those more favorable interconnection

---

[2] See e.g. Compl. ¶¶ 6, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, & 27.

agreements pursuant to Section 252(i) of the Act. Compl. ¶¶ 14, 24.[3]

The obligation of Qwest to file the subject interconnection agreements arose under Section 252(a) and (e) of the 1996 Act. Similarly, any right AT&T may have had to the terms in a competitor's interconnection agreement arose under Section 252(i) of the 1996 Act and under provisions of the parties interconnection agreement which reference the 1996 Act. AT&T's breach of contract claim depends, at least in part, on establishing that Qwest's conduct as alleged breached its obligations under the 1996 Act and the parties interconnection agreements referencing the 1996 Act. See Compl. ¶27. Likewise, AT&T's breach of the covenant of good faith and fair dealing claim identifies the source of those alleged breaches claiming that Qwest violated its duty of good faith and fair dealing "by failing to apprise AT&T and TCG of the terms of its secret agreements with Eschelon and McLeodUSA, and by failing to file those agreements as required by law, in order to induce AT&T and TCG to continue to pay the higher rates in their interconnection agreements rather than to avail themselves of the discounts in the secret agreements." Id. ¶40. AT&T specifically alleges that the implied covenants breached include "an obligation

---

[3]Qwest contends that "[o]nce the competitor's agreement was no longer in effect, AT&T had no right under Section 252(i) to opt-in to the terminated provisions." Mem. Opp'n, p.5.

by Qwest to comply with all applicable public utility and public telecommunications laws." Id. ¶30. The Complaint repeatedly and specifically references the 1996 Act.[4]

In Verizon Maryland, Inc. V. Global Naps, Inc., 377 F.3d 355 (4th Cir. 2004), the Fourth Circuit found that federal question jurisdiction under 28 U.S.C. § 1331 existed in an action seeking review of an order of the Maryland utilities commission interpreting an interconnection agreement, in part, because the complaint called for an interpretation of a federally mandated agreement which incorporated federal law, and because the contract at issue involved duties that are creations of federal law. That Court viewed interconnection agreements as a creation of federal law.

> Interconnection agreements are thus the vehicles chosen by Congress to implement the duties imposed in § 251. They are, in short, federally mandated agreements, and "[t]o the extent [an agreement] imposes a duty consistent with the Act ... that duty is a federal requirement." Central Airlines, 372 U.S. at 695, 83 S. Ct. 956. The contractual duty at issue in this case-to pay reciprocal compensation "for transport and termination of Local Traffic" is a duty imposed by the 1996 Act. The scope of this duty is at the heart of Verizon's contract claim, and the resolution of that claim depends on the interpretation and application of federal law. ...
>
> Finally, we recognize that "[t]he determination of whether a federal issue is sufficiently substantial should be informed by ... whether the [exercise] of

---

[4] See, e.g., Id. ¶¶ 6,7,8,9,10,11,14,20,23, & 24.

7

> federal judicial power is both appropriate and pragmatic." ... This area of consideration takes us to the basic purpose of the 1996 Act. As the Supreme Court said, the Act took "the regulation of local [telephone service] away from the States" and established "a new federal regime" designed to promote competition. ...

*Verizon Maryland*, 377 F.3d at 364-65 (citations omitted). That Court also noted: "The jurisdictional analysis must take into account the broader federal interest; it must recognize that the interconnection agreement and the duties specified therein ... have the imprimatur of federal law." *Id.* at 365 n. 1 (citing *International Association of Machinists v. Central Airlines*, Inc., 375 U.S. 682, 692 (1963). *See also, Core Communications v. Verizon Pennsylvania, Inc.*, 423 F. Supp. 2d 493, 498 (E.D. Pa. 2006)(citing *Verizon Maryland* court observed that § 1331 jurisdiction would be present because determining whether statutory duties imposed by the 1996 Act were breached involved interpretation and application of federal law); *ICG Telecom Group, Inc. V. Qwest Corp.*, 375 F. Supp. 2d 1084, 1087 (D. Colo. 2005)(finding persuasive the reasoning of *Verizon Maryland*, that Congress intended the 1996 Act and agreements thereunder to remove regulation of local telephone markets from states and to substitute a federal scheme, the court concluded that federal question jurisdiction existed because resolution of dispute required interpretation of interconnection agreement subject to the 1996 Act).

This Court finds the analysis of *Verison Maryland*, *id.*, persuasive.[5] Here, the legal and contractual duties alleged to

---

[5]The Court does not find AT&T's argument to the contrary convincing. In moving for remand, AT&T relies on *Brooks Fiber*, 235 F.3d at 498-99, for the proposition that claims like those presented here arise under state law and must be resolved applying state law principles, and, therefore, this Court lacks original jurisdiction over those claims. In the Court's view, AT&T's reliance on *Brooks Fiber* is misplaced. The relevant issue in that case arose in the context of whether the district court was limited to reviewing actions of the Oklahoma Corporations Commissions ("OCC") in interpreting the parties interconnection agreement "only for compliance with federal law, or whether the court's review may extend to application of state contract law". *Id.* at 498. Reasoning that to conclude otherwise would be a waste of judicial resources, the Tenth Circuit held that the district court could also review OCC determinations of state law. Noting that the OCC required reciprocal compensation in that instance, "not because federal law requires such compensation, but because the Agreement, as construed under Oklahoma state law, requires it", *id.* at 499, the court stated that "[t]he Agreement itself and state law principles govern the questions of interpretation of the contract and enforcement of its provisions." *Id.* This Court finds nothing in *Brooks Fiber* at odds with concluding that the Court has original jurisdiction here. As Qwest observes, *Brooks Fiber* recognized the primacy of federal law, even where there is a role for state law: "The OCC has an obligation to interpret the Agreement within the bounds of existing federal law." *Id.* Exercising original jurisdiction to determine issues of federal law as contemplated in *Verizon* is not inconsistent with the suggestion in *Brooks Fiber* that courts may proceed with state law determinations exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

Likewise, AT&T's reliance on *Empire HealthChoice Assur., Inc. v. McVeigh*, 126 S. Ct. 2121 (2006), for the proposition that this case does not present an issue of federal law for purposes of federal question jurisdiction is rejected. That case, which involved a suit by a federal employee's health insurance carrier for reimbursement of benefits, because the employee had recovered damages for his injuries in a state court tort action, is easily distinguished. As the Court noted, the relevant jurisdictional statute did not encompass contract based reimbursement claims and the suit did not involve issues of law that belonged in federal court. Rather the Court reasoned that the reimbursement claim was triggered by settlement of the personal injury action launched in

have been breached are imposed by the 1996 Act. They are at the heart of AT&T's Complaint and their resolution depends on the application and interpretation of federal law. The Court for purposes of determining jurisdiction, therefore, concludes that AT&T's claims, at least in part, arise under federal law and that AT&T's right to relief necessarily depends on resolution of substantial questions of federal law.[6] Therefore, federal question jurisdiction is conferred on this Court under 28 U.S.C. § 1331.[7]

---

state court, rather than by action of any federal agency or service. In contrast, here AT&T clearly claims that Qwest violated rights and duties mandated by 1996 Act. As Qwest puts it, "this is not a case of federal law simply being 'referenced' in a contract. Rather, the Federal Act governs not only the establishment of the agreements at issue, but in particular (1) when such agreements must be made public to other competitors through filing - under Sections 252(a) and (e) - and (2) when competitors may or may not have access to the same terms as their competitors - under Section 252(i)." Mem. Opp', p. 12.

[6]For example, Qwest contends that its obligation to file the competing and allegedly more favorable agreements at issue arose under the 1996 Act, which duty was extinguished once those agreements were no longer in effect. Determining the scope of those federally mandated duties and whether Qwest breached any of its statutory duties requires an interpretation of those duties. Additionally, as Qwest suggests, the Court may "need to address whether the federal rights and remedies specified in the Act ... prevent AT&T from asserting any arguably inconsistent state law claim." Mem. Opp'n pp. 5-6

[7]The Court finds further support for its decision in the recent opinion of the United States District Court for the District of Wyoming addressing what appears to be the identical issue presented here and finding federal question jurisdiction. See Order Den. Mot. Remand, AT&T Commun. of the Mountain States, Inc. v. Qwest Corp., Case No. 06-cv-232-D (D. Wyo. Dec. 12, 2006)(copy attached to Qwest's Mot. File Supplemental Authority, Ex. 1).

### III. CONCLUSION

For the reasons stated, as well as generally for the reasons set forth by Qwest in its responsive pleadings, AT&T's Motion to Remand is denied.

IT IS SO ORDERED.

DATED this __13th__ day of __February__, 2007.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT